UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WILLIE L. VALES, JR.,

       Plaintiff,

v.                   Case No. 19-cv-1219-bhl

CHRISTOPHER MANTHEI, et al.,

       Defendants.

---

## DECISION AND ORDER

---

In this §1983 case, plaintiff Willie L. Vales, Jr. asserts claims against defendant Keith Barzyk for allegedly using excessive force in the course of breaking up a fight between Vales and another inmate, and against Barzyk and defendants Samantha Rynes and Christopher Manthei for failing to protect him from another inmate. (ECF No. 8.) On June 29, 2020, the defendants filed a motion for summary judgment. (ECF No. 45.) That motion is fully briefed and ready for the Court's decision.

## FACTUAL BACKGROUND

Vales was an inmate at Waupun Correctional Institution during the relevant time. (ECF No. 47 at ¶1.) Rynes was working as a correctional officer; Barzyk was working as a correctional officer II; and Manthei was working as a correctional sergeant, specifically as the first shift food service sergeant. (*Id.* at ¶¶2-4.)

On March 30, 2019, Vales and inmate Jeremy Stater fought while working in the kitchen. (ECF No. 47 at ¶9.) According to Manthei, he saw Vales and Stater fighting and immediately notified other staff of the fight over his radio. (*Id.* at ¶17.) Because the floors in the kitchen can be slippery, Manthei jogged over to where the inmates were fighting and arrived about fourteen seconds after the fight started. (*Id.* at ¶¶17-19.) Manthei then directed Vales and Stater to stop fighting, but they both ignored him. (*Id.* at ¶¶28-29.)

According to Barzyk, he heard Manthei yell "fight," and then proceeded to where the inmates were fighting and arrived just seconds after Manthei. (ECF No. 47 at ¶¶20-22.) Barzyk

1

reports that he saw Vales repeatedly punching Stater, and confirms that he heard Manthei yell at Vales and Stater to stop fighting at least twice. (*Id.* at ¶¶30-31.) Barzyk also claims that he too yelled at the inmates to stop fighting at least once, but Vales continued to punch Stater. (*Id.* at ¶31.) Barzyk explains that, because the inmates ignored his and Manthei's orders to stop fighting, he believed additional force was necessary to stop the fight, minimize risk of injury to staff and inmates, and allow staff to quickly restore order. (*Id.* at ¶¶33-35.)

Barzyk states that he attempted to administer a one-second burst of Oleoresin Capsicum, also known as pepper spray, to both inmates' eyes. (ECF No. 47 at ¶33.) Because the inmates were moving as they fought, it was not clear if the spray hit both of them. (*Id.* at ¶37.) According to Barzyk and Manthei, Vales immediately stopped fighting after he was sprayed. (*Id.* at ¶38.) Manthei and Barzyk explain that, before they could position themselves between the inmates to apply handcuffs, Stater—abruptly and without warning—struck Vales from behind. (ECF No. 47 at ¶39.) Manthei and Barzyk thought Stater had been impacted by the pepper spray; they state that they had no warning that Stater would attack Vales after Vales started to walk away. (*Id.* at ¶¶41-42.) Barzyk administered another one-second burst of spray to Stater, and he stopped fighting. (*Id.* at ¶43.)

Rynes contends she heard Barzyk report the fight over the radio and headed toward Manthei and Barzyk, arriving just seconds after they did. (ECF No. 47 at ¶¶24-27.) While Manthei and Barzyk engaged the inmates, Rynes focused on crowd control. (*Id.* at ¶32.)

Vales tells a different version of events. He disputes that he ignored Manthei's orders to stop fighting, claiming that, as soon as he heard the order to stop, he did so and turned to walk away from the fight (ECF No. 55 at ¶12; ECF No. 56 at ¶29.) He insists that even though he stopped fighting when ordered, Barzyk nevertheless walked up to him and sprayed him in the face with pepper spray, which caused his eyes, lungs, throat, and sinuses to burn. (ECF No. 56 at ¶¶33-34; ECF No. 55 at ¶¶13-14.) Vales also claims that Barzyk initially sprayed only Vales, not his adversary, and that it was only after the fight resumed and Stater struck Vales from behind that Barzyk used pepper spray at all on Stater. (ECF No. 55 at ¶¶20, 22.)

According to Vales, Manthei and Barzyk had ample time to position themselves between him and Stater and to restrain Stater before he attacked him. (ECF No. 56 at ¶39; ECF No. 55 at ¶54.) Vales explains that these defendants "had a particularly chummy relationship" with Stater, meaning they joked, laughed, and gossiped with Stater more than with any other inmate. (ECF

2

No. 56 at ¶39; ECF No. 55 at ¶¶48-49.) Vales speculates that Manthei and Barzyk allowed Stater to attack him because Vales had been getting the better of Stater before they intervened. (ECF No. 56 at ¶39.)

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

### A. Excessive Force

"The Eighth Amendment does not forbid every use of force against a prisoner. What is prohibited is the wanton infliction of pain, and thus a use of force is constitutional if part of a good-faith effort to restore discipline." *Mitchell v. Krueger*, 594 F. App'x. 874, 877 (7th Cir. 2014) (citing *Whitley v. Albers*, 475 U.S. 312, 319-21 (1986) and *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009)). Only when force is used sadistically for the very purpose of causing harm will prison staff be liable. *Id.* (citing in part *Lewis*, 581 F.3d at 476).

3

Vales and defendants have different recollections of what Vales was doing when Barzyk sprayed him with pepper spray. Vales says that, upon hearing the officers' orders to stop fighting, he immediately disengaged and began to walk away. In his sworn complaint, Vales provided a more detailed description of what he remembers occurring; he stated, "When the petitioner heard this directive to stop fighting, that[']s when the petitioner stopped and threw up [his] hands, and turned around and started walking away from the altercation. . . . And when the petitioner had got about 5 feet away from the altercation C.O.2 Barzyk came up to the petitioner and sprayed the Mark 3 O.C. Spray in the face of the petitioner." (ECF No. 1 at 4.) Barzyk, on the other hand, reports that Manthei had yelled at Vales and Stater to stop fighting at least two times, and he had yelled at them at least one time. Barzyk states that it was only after Vales and Stater ignored him and continued to fight that he sprayed both inmates with prepper spray in an attempt to get them to stop fighting.

The competing narratives might be enough to create a jury issue on whether Vales complied with orders to stop fighting and was walking away when Barzyk pepper sprayed him, or whether Barzyk was using the pepper spray as part of a good-faith effort to restore discipline, but the parties' statements are not the only evidence in the record. In addition to their sworn statements, defendants have submitted a video of the incident.[1] (*See* ECF No. 52.)

The video shows that the incident unfolded quickly. Vales and Stater throw multiple punches as Manthei comes running from the bottom of the frame. The video has no sound, but Manthei motions as though he is speaking into a radio on his jacket. Closely behind Manthei is Barzyk. Vales is facing the approaching defendants; Stater has his back or side to the approaching defendants. By the time defendants arrive at the fight, Vales has gotten the better of Stater. He is repeatedly punching Stater, who is doubled over. Because there is no sound and defendants' backs are to the camera, it is hard to tell if defendants are shouting commands to stop fighting. But all parties, including Vales, agree that the inmates were ordered to stop fighting. The parties only real dispute is whether Vales complied with the orders and stopped fighting before or after Barzyk sprayed him with the pepper spray. The video shows unequivocally that Vales did not stop fighting until after Barzyk pointed the pepper spray canister at him. On the video, Barzyk has the pepper spray out, and he raises his arm as he hurries toward the fighting

---

[1] Vales explains that he did not have the equipment needed to view the video. His statements are based solely on his memory of what occurred.

inmates. His arm moves in an upward sweeping motion, consistent with his statement that he tried to spray both inmates. Stater is doubled over and closest to Barzyk; Vales is standing upright and facing Barzyk. The position of the inmates relative to Barzyk and the fact that Vales clearly has the better of Stater explains why Vales takes the brunt of the pepper spray. Consistent with Barzyk's statement, Vales immediately stops fighting as soon as Barzyk points the pepper spray canister at him. The video does not support Vales' memory of what happened. Vales had not stopped fighting when Barzyk approached the fight. He certainly had not walked "about 5 feet away from the altercation" when Barzyk sprayed him. The video shows Vales winding up for his final punch when Barzyk points the pepper spray canister at him, supporting Barzyk's assertion that he used the pepper spray in an effort to stop Vales and Stater from fighting.

The U.S. Supreme Court has explained that, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). This is the case here with regard to the factual issue of whether Barzyk sprayed Vales after Vales had clearly stopped fighting or whether he sprayed him in an effort to get him to stop fighting. Vales' version is so discredited by the video that no reasonable jury could believe him. Given that the video shows Barzyk using the pepper spray in a good-faith effort to restore discipline, his use of force did not violate the Eighth Amendment. Barzyk is entitled to summary judgment on Vales' excessive-force claim.

### B. Failure to Protect

The parties disagree on the factual basis of Vales' failure-to-protect claim. Defendants point out that the Court allowed Vales to proceed based on defendants' alleged failure to timely intervene in the fight. (*See* ECF No. 8 at 4.) Vales does not pursue this argument in his response materials. (*See* ECF No. 56 at ¶¶49-51.) Instead, he insists that his claim is based on defendants' failure to prevent Stater from attacking him after Vales had complied with defendants' orders to stop fighting. (ECF No. 57 at 2.) The evidence shows that defendants are entitled to summary judgment on this claim regardless of which factual basis the Court considers.

5

Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of the inmates." *Balsewicz v. Pawlyk*, 963 F.3d 650, 654 (7th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). For a prisoner to prevail on a claim that a prison official failed to protect him from another inmate, the prisoner must prove two components, one objective and one subjective. *Id.* First, the prisoner must show that he was "exposed to a harm that was objectively serious." *Id.* (citing *Farmer*, 511 U.S. at 834.) Second, he must show that the prison official "kn[ew] of and disregarded an excessive risk to the inmate's health or safety." *Id.* (citing *Farmer*, 511 U.S. at 837-38.)

Without doubt, Vales faced an objectively serious harm. Being violently struck by another inmate "is the kind of in-prison assault that is simply not part of the penalty that criminal offenders pay for their offenses against society." *Balsewicz*, 963 F.3d at 654 (internal quotation marks and citations omitted). However, no jury could reasonably conclude that defendants were deliberately indifferent to the risk of harm that Stater posed to Vales.

The video shows Manthei and Barzyk moving quickly toward the fight almost immediately after it begins, undermining any suggestion that they could have intervened sooner than they did. Apparently conceding this point, Vales focuses his argument on defendants' alleged failure to secure Stater after Vales began to walk away from the fight. He argues that they had plenty of time to do so. Defendants state that Stater's attack came out of nowhere. Barzyk explains that he thought he had sprayed both inmates, and did not realize Stater had not been incapacitated.

As with Vales' excessive-force claim, the video so clearly discredits Vales' version that no reasonable jury could believe him. As previously noted, the incident unfolded quickly. There was, at most, a one-second pause between Vales turning to walk away and Stater suddenly lunging at Vales from behind. Just prior to lunging, Stater had stopped fighting, was showing no clear signs of aggression, and was surrounded by multiple staff members. The video shows Barzyk nearly simultaneously lunging after Stater with his pepper spray canister pointed at him. The other defendants also moved toward Stater. After viewing the video, no jury could reasonably conclude that any of the defendants knew Stater was going to attack Vales or that they had an opportunity to restrain Stater before he attacked Vales. Because there is no evidence to support a conclusion that defendants were deliberately indifferent to the risk of harm Stater posed to Vales, defendants are entitled to summary judgment.

Finally, Vales makes numerous arguments in his response materials, which he claims necessitate additional discovery and the recruitment of counsel. Vales makes these arguments to show that his version of what occurred is more credible than defendants' version. However, it is clear from the video that Vales' recollection of what happened is not accurate. Given that none of Vales' arguments have an impact on what the video shows, it is unnecessary for the Court to address them.

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment (ECF No. 45) is **GRANTED** and this case is **DISMISSED**.

This order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The Court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 14th day of October, 2020.

s/ Brett H/ Ludwig
Brett H. Ludwig
United States District Judge